COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| DELFINGEN US-TEXAS, L.P., | | No. 08-12-00022-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 3 |
| | § | |
| GUADALUPE VALENZUELA, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2011-251) |
| | § | |

**O P I N I O N**

Delfingen US-Texas, L.P. has brought this accelerated appeal from an order denying its motion to compel arbitration. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

Delfingen specializes in the design and manufacture of wiring harnesses and other plastic components for the automotive industry. Guadalupe Valenzuela worked as a temporary employee for Delfingen for about four months in El Paso, Texas being hired as a permanent employee on May 5, 2008. She is unable to read English. On May 7, 2008, Valenzuela attended an orientation session for new employees conducted by Maria Guzman, Delfingen's human resources representative. Guzman conducted the entire orientation session in Spanish. At the conclusion of the meeting, Valenzuela signed several documents which were in English, including the "Dispute Resolution and Arbitration Policy and Agreement". By signing the Agreement, Valenzuela acknowledged she had read the document and "agree[d] to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Delfingen."

On January 24, 2011, Valenzuela filed suit against Delfingen alleging she was wrongfully terminated because she pursued workers' compensation benefits after suffering an on-the-job injury. Delfingen filed a motion to stay proceedings and compel arbitration based on the Agreement. In her response, Valenzuela alleged that the Agreement is procedurally unconscionable because it was never explained to her in Spanish and she was "rushed to sign the document." Valenzuela's affidavit is attached to the response and avers that:

> I was hired by Delfingen U.S.-Texas, L.P. to be a vent tube assembler in May 2008. The only language I can communicate in is Spanish. I cannot read English. My employer knew this and hired me for the job. When I was hired my employer presented many forms to me for signature. All of the forms were written in English. I understand now that one these [sic] forms may have been the DISPUTE RESOLUTION AND ARBITRATION POLICY AND AGREEMENT. This form was not explained to me nor was it made available to me in Spanish so I could evaluate it and make a decision to accept it or reject it. I had no idea that I was waiving my constitutional rights to bring statutory and common-law claims against my employer in a court of law. Delfingen U.S.-Texas, L.P. never explained to me that I was entering into such an agreement.
>
> Maria Guzman was the person who was telling me to fill out the forms. She told me that she was going to explain only the important parts of the paperwork. Because I do not understand English, I was at a disadvantage while going through the paperwork, as I had no means to determine for myself what the important parts of the paperwork were. However, I took Ms. Guzman's word that everything important was being translated for me by her. Ms. Guzman translated the policies of Delfingen U.S.-Texas, L.P. with regard to attendance, tardiness, and punctuality in detail. At the end of the process of completing all of the paperwork, Ms. Guzman asked me if I had any other questions. I asked her some more questions about the attendance policy, but I had no idea that there had been a waiver of the right to bring my employer to court in the event of a dispute. Ms. Guzman did not mention the arbitration agreement or what it meant. I would have definitely asked for more information about this policy had I known that it was something that I had been coerced and fraudulently induced into signing.
>
> I understand that this is a substantially equal version of the affidavit I gave in Spanish, and this version has been read and translated to me.[1]

Delfingen filed a written reply to Valenzuela's response contending that the inability to

[1] Valenzuela's affidavit made in Spanish is also attached to the response.

speak or read English does not invalidate the Agreement. It also challenged Valenzuela's assertions that Guzman did not explain the arbitration agreement to her in Spanish and that Valenzuela is unable to read English. Delfingen supported its reply with Guzman's affidavit:

> 2. All new employees hired by Delfingen must attend a new employee orientation. The purpose of the orientation is to provide all new employees with information about the company's policies and procedures. I am in charge of conducting the new employee orientation sessions which take place at Delfingen's El Paso, Texas location. Orientation sessions are typically conducted in groups of the employees recently hired. Sometimes, we hire employees whose native or first language is Spanish. I am fully bilingual, and, therefore, when I conduct the orientation sessions, I explain all of the company's policies in both English and Spanish. As I explain each policy, I make it a point to ask the employees whether they have any questions.

> 3. Delfingen has an arbitration policy which requires both the company and the employee to resolve employment-related disputes through the arbitration process. During the orientation sessions, new employees are presented with the arbitration agreement for their signature. I explain the company's arbitration policy to the employees in both English and Spanish and always ask if they have any questions about it.

> 4. Guadalupe Valenzuela is a former employee of Delfingen. Ms. Valenzuela was hired on or about May 5, 2008 and attended the new employee orientation held on May 7, 2008. I specifically recall Ms. Valenzuela being present at this orientation. Ms. Valenzuela and a couple of other employees in this orientation session, including a new hire by the name of Nancy Colorado, were not native English speakers. During the May 7, 2008 session, I recall explaining all of the company's policies in English and Spanish including the arbitration policy. When I asked if anyone had questions about the arbitration policy, Ms. Valenzuela did not say anything.

The trial court initially denied the motion to compel arbitration, but at Delfingen's request and with Valenzuela's agreement, the court withdrew that order and conducted an evidentiary hearing.[2] At that hearing, only Valenzuela and Guzman testified. Valenzuela testified that she understood "very little" English. She admitted signing the Arbitration Agreement. When asked

---

[2] The trial court was required to conduct an evidentiary hearing to resolve the disputed material facts raised by the affidavits. *See Jack B. Anglin Company, Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992); *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 875 (Tex.App.--El Paso 2005, orig. proceeding).

whether she could read it, Valenzuela said she could read it but she could not understand it. Valenzuela recalled that Guzman communicated with her in Spanish, but she only explained the attendance policies and production requirements. When Valenzuela signed the Agreement, she believed she was signing the attendance policy. She was never told that if she signed the Arbitration Agreement, she was waiving her right to sue her employer. Valenzuela specifically testified that Guzman did not trick her into signing the Agreement but she insisted that Guzman did not explain it. If Valenzuela had known the document she signed was an arbitration agreement, she would not have signed it.

On cross-examination, Valenzuela admitted that Guzman explained company policies other than attendance, including reporting injuries, substance abuse and alcohol, sexual harassment, clocking-in, the standards of conduct, and employment safety. When Valenzuela signed the Agreement, she thought she was signing those policies as well as the attendance policy. Delfingen's counsel then asked Valenzuela whether it was possible she was confusing the arbitration agreement with the employee handbook which contained those policies, and she agreed it was possible.

Guzman testified that Delfingen provided Valenzuela with a "new hire packet" of documents and forms at some point prior to the beginning of the orientation session.[3] The packet included five documents which required the new employee's signature: (1) Delfingen's injury reporting policy; (2) an acknowledgement that the employee has received the Company Employee Handbook; (3) the "Dispute Resolution and Arbitration Policy and Agreement"; (4) an acknowledgement the employee has received a copy of Delfingen's Safety Policies and Guidelines Handbook; and (5) the Proprietary Information Agreement. All of the documents are

---

[3] According to Guzman, Delfingen usually provided the packet to new employees a couple of days before the orientation session, but she could not recall exactly when Valenzuela had been given the packet prior to the orientation session.

in English.

During the orientation session, which Guzman conducted entirely in Spanish because all of the new employees were Spanish-speakers, Guzman informed Valenzuela and the other new employees about the company's policies and procedures. With respect to the Arbitration Agreement, Guzman explained that "as an employee, you're waiving your rights to take any dispute to Court and you handle it within the company, with an arbitrator . . . ." At the conclusion of the meeting, Guzman met with each new employee individually and went over the paperwork with them before they signed those documents which required a signature. Valenzuela did not ask any questions and signed the Agreement.

The trial court signed an order denying Delfingen's motion to compel arbitration. Delfingen filed notice of accelerated appeal.

## PROCEDURAL UNCONSCIONABILITY

In its sole issue on appeal, Delfingen contends that Valenzuela failed to meet her burden of showing that the arbitration agreement is procedurally unconscionable. Valenzuela responds that she met her burden of proof because there is evidence that Delfingen affirmatively misrepresented the nature of the arbitration agreement. Additionally, Valenzuela argues that procedural unconscionability exists in this case because she was "the weaker party in the atmosphere in which the arbitration agreement was obtained." More specifically, she asserts that the agreement is in English and Delfingen did not provide or explain it to her in Spanish.

*Applicable Law*

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *See In re AdvancePCS Health L.P*., 172 S.W.3d 603, 605 (Tex. 2005); *Inland Sea,*

- 5 -

*Inc. v. Castro*, --- S.W.3d ----, 2012 WL 1715242 at *2 (Tex.App.--El Paso 2012, pet. filed).  It is undisputed that the FAA is applicable to the Agreement at issue here.  Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (West 2009).  Thus, under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate.[4]  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *Inland Sea, Inc. v. Castro*, --- S.W.3d ----, 2012 WL 1715242 at *2.  Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcement.  *Inland Sea, Inc. v. Castro*, --- S.W.3d ----, 2012 WL 1715242 at *2; *see In re AdvancePCS*, 172 S.W.3d at 607.  In the context of enforcement, defenses refer to unconscionability, duress, fraudulent inducement, and revocation. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001); *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, --- S.W.3d ----, 2012 WL 1658644 at *7 (Tex.App.--El Paso 2012, no pet.).  Because the law favors arbitration, the burden of proving a defense to arbitration is on the party opposing it.  *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, --- S.W.3d ----, 2012 WL 1658644 at *7, *citing J.M. Davidson, Inc.*, 128 S.W.3d at 227.

Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law.  *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).  There is nothing *per se* unconscionable about an agreement to arbitrate employment disputes and Texas law has historically favored agreements to resolve such disputes.  *Id.*  But an arbitration agreement is invalid if it is unconscionable.  *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677-79 (Tex. 2006); *In re Halliburton Company*, 80 S.W.3d 566, 572 (Tex. 2002).

---

[4]  The parties agree that Texas contract law applies to the Arbitration Agreement.

Texas recognizes both procedural and substantive unconscionability. *In re Olshan Foundation Repair Company, LLC*, 328 S.W.3d 883, 892 (Tex. 2010). Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision. *In re Olshan Foundation Repair*, 328 S.W.3d at 892; *In re Palm Harbor Homes*, 195 S.W.3d at 677; *see TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex.App.--Houston [14th Dist.] 2007, pet. denied)(procedural unconscionability relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process). Valenzuela's defense is restricted to procedural unconscionability.

"Unconscionability" has no precise legal definition because it is not a concept but a determination to be made in light of a variety of factors. *Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991)(Gonzalez, J. concurring); *Arthur's Garage, Inc. v. Racal-Chubb Security Systems, Inc.*, 997 S.W.2d 803, 815 (Tex.App.--Dallas 1999, no pet.). In determining whether a contract is unconscionable, we must examine (1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex.App.--Waco 2005, pet. denied). The totality of the circumstances must be assessed as of the time the contract was formed. *Ski River*, 167 S.W.3d at 136; *El Paso Natural Gas Company v. Minco Oil & Gas Company*, 964 S.W.2d 54, 60-61 (Tex.App.--Amarillo 1997), *rev'd on other grounds*, 8 S.W.3d 309 (2000). The grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede, and the same is true for procedural abuse--the

circumstances surrounding the negotiations must be shocking. *Ski River*, 167 S.W.3d at 136; *El Paso Natural Gas Co.*, 964 S.W.2d at 62.

*Standard of Review*

The trial court's determination of the arbitration agreement's validity is a legal question subject to *de novo* review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Inland Sea, Inc. v. Castro*, --- S.W.3d ----, 2012 WL 1715242 at *2. Whether a contract is unconscionable at the time it is formed is also a question of law which is reviewed *de novo*. *In re Poly-America, L.P.*, 262 S.W.3d at 348-49; *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006); *Ski River*, 167 S.W.3d at 136. The determination of the facts relevant to the question of unconscionability is, however, a question for the trial court. *Besteman v. Pitcock*, 272 S.W.3d 777, 788 (Tex.App.--Texarkana 2008, no pet.).

Delfingen met its initial burden of showing that an agreement to arbitrate exists and Valenzuela has never disputed that her claim falls within its scope. Consequently, the presumption favoring arbitration attached and the burden shifted to Valenzuela to establish her defense of procedural unconscionability. Delfingen argues that Valenzuela failed to meet her burden and that the evidence does not support a determination that the arbitration agreement is procedurally unconscionable. Delfingen takes the position that we must review the trial court's fact findings under the no evidence or legal sufficiency standard. Valenzuela responds that we must engage in an abuse of discretion analysis and defer to the trial court's fact findings if they are supported by the record. The parties agree that unconscionability is a question of law subject to *de novo* review but they disagree regarding the standard to be applied to the trial court's relevant fact findings.

Delfingen has brought this interlocutory appeal pursuant to Section 51.016 of the Civil

Practice and Remedies Code. TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West Supp. 2012). Prior to the effective date of that statute, September 1, 2009, an order denying a motion to compel arbitration under the FAA could not be challenged in an interlocutory appeal. *Cleveland Construction, Inc. v. Levco Construction, Inc.*, 359 S.W.3d 843, 851 (Tex.App.--Houston [1st Dist.] 2012, pet. dism'd), *citing In re Merrill Lynch & Company*, 315 S.W.3d 888, 890-91 & n.3 (Tex. 2010)(orig. proceeding); *Sidley Austin Brown & Wood, LLP v. J.A. Green Development Corporation*, 327 S.W.3d 859, 862 (Tex.App.--Dallas 2010, no pet.), *citing Jack B. Anglin Company, Inc. v. Tipps*, 842 S.W.2d 266, 272-73 (Tex. 1992). Consequently, a party denied the right to arbitrate pursuant to an agreement subject to the FAA did not have an adequate remedy by appeal and was entitled to mandamus relief to correct a clear abuse of discretion. *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 642-43 (Tex.2009)(orig. proceeding). Under that clear abuse of discretion standard, a reviewing court is required to defer to the trial court's factual determinations if they are supported by the evidence and it reviews the trial court's legal determinations *de novo*. *Sidley*, 327 S.W.3d at 862, *citing In re Labatt*, 279 S.W.3d at 643. The Texas Supreme Court has not specifically addressed the appropriate standard of review for interlocutory appeals under Section 51.016 of an order denying a motion to compel arbitration.

In interlocutory appeals of orders denying motions to compel arbitration under the Texas Arbitration Act ("TAA"), some courts of appeals, including this court, have held that we review the trial court's fact findings under a legal sufficiency or "no evidence" standard while legal conclusions are reviewed *de novo*. *See e.g., McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex.App.--Houston [14th Dist.] 2007, no pet.); *Tri-Star Petroleum Co. v. Tipperary Corp.*, 107 S.W.3d 607, 616 (Tex.App.--El Paso 2003, pet. denied); *Fridl v. Cook*, 908 S.W.2d 507, 511

(Tex.App.--El Paso 1995, writ dism'd w.o.j.); *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.*, 849 S.W.2d 380, 384 (Tex.App.--Houston [14th Dist.] 1993, writ denied); *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 79 (Tex.App.--Houston [1st Dist.] 1988, no writ). When the facts are undisputed, the court reviews the legal conclusions *de novo*. *See McReynolds*, 222 S.W.3d at 739.

Other intermediate appellate courts have held that the trial court's order denying a motion to compel arbitration under the TAA should be reviewed under the abuse of discretion standard utilized when the trial court decides a matter involving both factual determinations and legal conclusions, sometimes referred to as a mixed question of law and fact. *See e.g., Chambers v. O'Quinn*, 305 S.W.3d 141, 146 (Tex.App.--Houston [1st Dist.] 2009, pet. denied); *Pony Express Courier Corporation v. Morris*, 921 S.W.2d 817, 820 (Tex.App.--San Antonio 1996, no writ); *see also State v. $217,590 in U.S. Currency*, 18 S.W.3d 631, 633 (Tex. 2000)(stating that an appellate court reviews a trial court's ruling on a mixed question of law and fact for an abuse of discretion); *Brainard v. Texas*, 12 S.W.3d 6, 30 (Tex. 1999)(holding that question whether a state agency's action is "unreasonable" within the meaning of Frivolous Claims Act, such that prevailing party is entitled to litigation costs and attorney fees, is a mixed question of law and fact subject to review for abuse of discretion), *disapproved on other grounds by Martin v. Amerman*, 133 S.W.3d 262, 267-68 (Tex. 2004). Under this standard, the appellate court defers to the trial court's factual determinations supported by the record and reviews legal conclusions *de novo*. *$217,590 in U.S. Currency*, 18 S.W.3d at 633; *Chambers*, 305 S.W.3d at 146-47; *Pony Express*, 921 S.W.2d at 820. The reviewing court does not engage in its own factual review, but decides whether the record supports the trial court's resolution of factual matters. *$217,590 in U.S. Currency*, 18 S.W.3d at 633-34. If the record supports the trial court's evidentiary findings,

the reviewing court is not at liberty to disturb them. *Id.* at 634. A reviewing court instead determines whether the trial court properly applied the law to the facts in reaching its legal conclusion. *Id.* It does not defer to the trial court on questions of law. *Perry Homes v. Cull*, 258 S.W.3d 580, 597-98 (Tex. 2008).

It is significant to the question before us that some intermediate appellate courts have determined that this abuse of discretion standard should be used when reviewing mixed questions of law and fact in appeals under Section 52.016. *See e.g., Cleveland Construction, Inc. v. Levco Construction*, Inc., 359 S.W.3d 843, 851 (Tex.App.--Houston [1st Dist.] 2012, pet. dism'd); *Garcia v. Huerta*, 340 S.W.3d 864, 868-69 (Tex.App.--San Antonio 2011, pet. filed); *Sidley*, 327 S.W.3d at 863; *SEB, Inc. v. Campbell*, No. 03-10-00375-CV, 2011 WL 749292, at *2 (Tex.App.--Austin Mar. 2, 2011, no pet.). This standard has also been applied in a non-arbitration setting where a court is addressing a defense that a contract is unconscionable. *See Ski River*, 167 S.W.3d at 136-37; *El Paso Natural Gas Company*, 964 S.W.2d at 60-61; W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S L.J. 1, 67-68 (2010).

While the Supreme Court has not directly addressed the standard of review issue presented in this case, it made clear in *Perry Homes v. Cull* that this same abuse of discretion standard applies when examining whether a trial court correctly determined that a party had waived its right to arbitration by substantially invoking the litigation process. *Perry Homes*, 258 S.W.3d at 597-98 ("Under a proper abuse of discretion review, waiver is a question of law for the court;" the court defers to a trial court's fact findings if they are supported by the evidence but does not defer to the trial court on questions of law). Given that unconscionability, like waiver, is a legal question which is reviewed *de novo* by the appellate court, we conclude that the appropriate standard of review in this case is the abuse of discretion standard. Accordingly, we

will not follow our prior decisions in *Tri-Star Petroleum Co. v. Tipperary Corporation*, 107 S.W.3d 607, 616 (Tex.App.--El Paso 2003, pet. denied) and *Fridl v. Cook*, 908 S.W.2d 507, 511 (Tex.App.--El Paso 1995, writ dism'd w.o.j.).

*Illiteracy and Misrepresentation*

Valenzuela argues that the Arbitration Agreement is procedurally unconscionable because: (1) she is unable to read English and Delfingen failed to provide a Spanish translation or explain it to her in Spanish; and (2) Delfingen affirmatively misrepresented the nature of the arbitration agreement. Under the FAA, unequal bargaining power does not establish grounds for defeating an agreement to arbitrate absent a well-supported claim that the agreement resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract. *In re AdvancePCS Health L.P.*, 172 S.W.3d at 608. Likewise, claims of unsophistication and inability to understand do not establish procedural unconscionability. *In re Palm Harbor Homes*, 195 S.W.3d at 679.

Delfingen stipulated during the evidentiary hearing that Valenzuela is "illiterate as to the English language." It is undisputed that the Arbitration Agreement is in English and Valenzuela signed it. Although Delfingen typically provided the "new hire" packet of documents, including the Arbitration Agreement, to employees a couple of days before the orientation session so they could read the documents prior to signing them, Guzman could not recall exactly when the packet was given to Valenzuela. Valenzuela admitted that she was given the documents before the orientation session and she did not ask either her daughter or son to translate them for her even though she knew they were important. It is undisputed that Delfingen did not provide a Spanish translation, but Guzman testified she discussed the Agreement at the orientation session which she conducted entirely in Spanish. Valenzuela contradicted Guzman and said that

Guzman never discussed or explained the Arbitration Agreement. The trial court could have disbelieved Guzman's testimony that she informed the new employees about the Arbitration Agreement before they signed it. Because this finding is supported by the record, we are not at liberty to disturb it.

Valenzuela did not ask anyone at the orientation session to read to her the Arbitration Agreement or any of the other documents requiring her signature. Valenzuela admitted that she was not forced or pressured into signing the Arbitration Agreement and she did not ask any questions about the documents she signed even though she was given an opportunity to do so during the two-hour orientation session and afterwards when she met individually with Guzman. She signed the documents because she wanted the job.

Standing alone, Valenzuela's illiteracy in English is insufficient to establish that the Agreement is unconscionable. A person who signs a contract must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract. *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 878 (Tex.App.--El Paso 2005, orig. proceeding); *Tamez v. Southwestern Motor Transport, Inc.*, 155 S.W.3d 564, 570 (Tex.App.--San Antonio 2004, no pet.); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex.App.--Houston [1st Dist.] 1986, no writ). Illiteracy is not a defense to enforcement of a contract and will not relieve a party of the consequences of the contract. *In re Big 8 Food Stores*, 166 S.W.3d at 878; *Tamez*, 155 S.W.3d at 570; *Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex.App.--San Antonio 1998, no pet.). Texas courts have for many years held that, absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract unless he was prevented from doing so by trick or artifice. *Associated Employers Lloyds v. Howard*, 156 Tex.

277, 294 S.W.2d 706, 708 (1956); *Indemnity Insurance Company of North America v. W.L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556-57 (1937); *In re Big 8 Food Stores*, 166 S.W.3d at 878; *Tamez*, 155 S.W.3d at 570 n.3; *Vera*, 989 S.W.2d at 17.

We do not consider Valenzuela's illiteracy in a vacuum because we must determine whether the Agreement is unconscionable based on the totality of the circumstances. Valenzuela's illiteracy is directly related to her assertion that Delfingen affirmatively misrepresented the nature of the Arbitration Agreement. Valenzuela attested in her affidavit that she accepted as true Guzman's statement that she would explain only the important parts of the paperwork. Valenzuela believed that Guzman was translating everything important contained in the paperwork. According to Valenzuela, Guzman never mentioned the Arbitration Agreement and did not tell Valenzuela that she had waived her right to go to court in the event of a dispute with her employer. Valenzuela testified as follows:

> [Q]: Okay. And did [Guzman] go through and tell you what you were signing in general?
>
> [A]: Well, she gave us a review of the most important things in the company. For example, if we were to arrive late, if we were to miss work and the obligations that we had with the company.
>
> [Q]: Does that mean attendance policy?
>
> [A]: Yes. Yes. And also that -- that there we need to do certain quota, that's the way they worked that.
>
> [Q]: In other words, the production you were required to do?
>
> [A]: Yes.
>
> [Q]: And when you signed these documents, including this one on May 7th of 2008, was this one (referring to the Arbitration Agreement) -- was this -- was that what you were explained?
>
> [A]: Yes.

- 14 -

[Q]:  Is that what you believed you were signing at the time was an attendance policy?

[A]:  Yes, sir.

[Q]:  And is that what you were told that these important documents primarily were were [sic] attendance and behavioral type things?

[A]:  Yes.  It was the company's policy that we were signing.

[Q]:  Okay.  Were you ever told that if you signed this document you would waive your right to a jury trial?

[A]:  No.

[Q]:  Were you ever told that you -- if you had a problem with your employer you wouldn't be able to come into a Court of Law and argue your case in front of a judge or a jury?

[A]:  No.

[Q]:  Was the word arbitration ever mentioned to you?

[A]:  I never knew what it was until you told me.

[Q]:  Okay.  And I'm not talking about what I told you.  I'm talking about when you were explained these documents back in May of 2008.  Was the word arbitration ever used to you?

[A]:  No.

[Q]:  So at the time you were told you were -- you were signing important attendance policies?

[A]:  Yes.

[Q]:  And that's what you believe you were signing?

[A]:  Yes.


On cross-examination, Valenzuela admitted that Guzman explained policies other than attendance, including reporting injuries, substance abuse and alcohol, sexual harassment, clocking-in, the standards of conduct, and employment safety.  When she signed the Agreement,

- 15 -

she thought she was signing those policies as well as the attendance policy. Delfingen's counsel then asked Valenzuela whether it was possible she was confusing the Arbitration Agreement with the employee handbook which contained those policies, and she agreed it was possible.[5] When asked whether it was possible that she just did not remember Guzman explaining the Arbitration Agreement, Valenzuela insisted that it was not possible. She also explained that she did not ask any questions about the Arbitration Agreement because she did not know it existed.

Giving the appropriate amount of deference to the trial court's weighing of the evidence, assessment of credibility, and resolution of conflicts in the evidence, we conclude that the trial court could have believed Valenzuela's testimony that Guzman told her she was only going to translate the important portions of the documents presented to Valenzuela. As already noted, the trial court could have reasonably found that Guzman did not discuss or explain the Arbitration Agreement. The court could have also believed Valenzuela's testimony that Guzman told her the Arbitration Agreement was the company's policies, such as the attendance policy. From these findings, the court could have concluded that Delfingen affirmatively misled Valenzuela about the nature and significance of the Arbitration Agreement.

Delfingen insists it had no duty to explain the Arbitration Agreement to Valenzuela. It cites the rule that absent a duty to disclose, such as in a confidential or fiduciary relationship, an agreement is not unconscionable or fraudulent merely because one party was not informed as to the arbitration provisions. *See In re Green Tree Servicing LLC*, 275 S.W.3d 592 (Tex.App.--Texarkana 2008, orig. proceeding). But in this case, Delfingen knew that Valenzuela did not understand English and it required her to attend an orientation session during which a company representative told her that she was going to translate the important parts of the documents. Accepting as we must the trial court's finding that Guzman did not explain, discuss,

---

[5] Valenzuela also had to sign an acknowledgement that she had received a copy of the employee handbook.

or translate the Arbitration Agreement, we recognize that the trial court could have also found that Delfingen affirmatively misled Valenzuela about the importance of the Agreement. Based on the totality of the circumstances, we conclude that Valenzuela carried her burden of proving that the Arbitration Agreement is procedurally unconscionable. Accordingly, we overrule the sole issue presented on appeal and affirm the trial court's order denying the motion to compel arbitration.

February 6, 2013

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

- 17 -