# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00309-CV

---

**Jacqueline Morales, Appellant**

**v.**

**Evan Lowenberg, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-23-005422, THE HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

---

### O P I N I O N

Jacqueline Morales appeals from an order enforcing a settlement agreement and awarding attorney's fees. Morales contends that an automatically generated email signature does not support formation of an enforceable Rule 11 agreement, that the temporary restraining orders and injunction were not proper, and that the award for attorney's fees includes work unrelated to enforcing the settlement agreement. We will modify in part the Order Granting Motion to Enforce Settlement Agreement to reduce the attorney's fees awarded and affirm that order as modified.

### BACKGROUND

This case concerns custody of a dog named Yuvi. The record is fairly slim because the trial-court proceedings concluded based on enforcement of a settlement agreement.

According to plaintiff/appellee Evan Lowenberg's pleadings, Morales and Lowenberg began a romantic relationship sometime in 2019 and lived together until March 2023.[1] In February 2022, they visited her family in Brownsville. Her brother found a stray dog that the family intended to take to an animal shelter, but Morales and Lowenberg decided to take the dog with them to Austin. The parties separated in March 2023 and agreed to each keep the dog half the time with adjustments for other obligations. This lasted until October 2023 when, Lowenberg alleged, Morales kept the dog through his period of possession.

Lowenberg sued for conversion and breach of contract. He sought mediation and later applied for a temporary restraining order and temporary injunction preventing her from moving the dog out of Travis County or taking the dog outside of Texas. He sought an order that Morales return the dog to him in Travis County. He requested specific performance of an agreement for equal, alternating possession of the dog.

On March 29, 2024, the trial court granted a temporary restraining order after an ex parte hearing. Among other requirements, the court ordered Morales to deliver the dog to Lowenberg in Austin no later than April 11, 2024; if the parties did not agree on an exchange date by April 2, Morales's delivery date accelerated to April 6, 2024. They would resume alternating custody. The court set the temporary injunction to be heard on April 26, 2024.

The parties did not agree on a return date before April 2. Early on April 6, Morales advised Lowenberg's attorney and the trial court by email that she would not deliver the dog to Lowenberg as required by the TRO because of concerns over missing work, travel

---

[1] Morales and Lowenberg dispute whether they broke up in 2021 (Morales, based on her April 2024 email) or 2023 (Lowenberg, based on assertion in November 2023 petition).

distance, and her safety. She said that Lowenberg could pick up the dog in Brownsville at a location where she would not be and that she would not get rid of the dog or take it out of state.

Lowenberg moved for contempt, seeking $350 per day she violated the TRO. At the April 17, 2024 Motion for Contempt hearing, the trial court opted not to hold Morales in contempt for failing to give Lowenberg the dog as long as she did so on Friday, April 19, 2024. The court ordered Morales to deliver the dog to Lowenberg's attorney in Austin by Friday, April 19, at noon.

Instead, at 2:48 a.m. on April 19, Morales emailed Lowenberg's attorney the following with the subject line "Settlement Offer":

> Ms. [Ashley] Morgan,
> 2.5 years after breaking up with Evan I'm still trying to be done with him even if it means giving up my own dog. Here is my offer: I will surrender Yuvi to you. I will relinquish all rights to her. I will meet you in Austin on Sunday, April 21 at 8 PM at 8314 State Hwy 71, Austin, TX 78735. Evan and I will sign mutual releases. Each party will bear their own fees and costs. Evan will never contact me or my family again, directly or through anyone other than you. The offer stands until Friday, April 19, at 5 PM. Pass this on to your client.
>
> Jacqueline Morales, Esq.
> (she/her/ella)
> [phone number]
> [employer]

Morgan responded at 8:50 a.m.: "I've conferred with my client, and he accepts your offer. I'll send you a proposed Release later today." Morgan sent a release at 11:04 a.m. for Morales's review. At 5:04 p.m., Morales asked for more time to review the language of the release and an extension to deliver the dog on Saturday "in compliance with the TRO." Morgan supplied an editable version of the release and wrote:

3

I suppose I ought to have stated it expressly in the draft Release, but now that Mr. Lowenberg has accepted your settlement offer, the settlement resolves the dispute over contempt.

I'm not available tomorrow night. I am still available for the time you proposed in the offer (8pm on Sunday). I could also meet you earlier in the day on Saturday (before 4:30pm) or on Sunday in the morning or early afternoon.

Morales delivered the dog consistent with her Settlement Agreement email on Sunday, April 21.

On Monday, April 22, 2024, Lowenberg filed the email exchange as a Rule 11 settlement agreement. Less than an hour later, Morales's attorney filed his notice of appearance. That same morning, Morales's attorney sent an email announcing that Morales revoked any settlement offers and denied that a Rule 11 agreement was formed. Lowenberg filed a Motion to Enforce Settlement Agreement and set a hearing for the same day as the temporary-injunction hearing. Morales, now through counsel, responded that she never stated that their emails would serve as a Rule 11 agreement, that there were no signatures attached to the emails, and that she sent the emails under immense pressure from the lawsuit.

At the April 26 hearing, the court granted the motion to enforce the settlement and cancelled the temporary-injunction hearing.

**DISCUSSION**

Morales contends that Lowenberg's acceptance of her settlement offer did not form a binding Rule 11 agreement because the automated signature block did not constitute a signature. She also contends that the court's TRO and Lowenberg's requested injunction were

4

improper. Finally, she contends that the award of attorney's fees was erroneous because it included fees beyond those needed to enforce the settlement agreement.

## I. Morales signed the Settlement Offer email sufficiently to form a Rule 11 agreement.

By issue one, Morales contends that her Settlement Offer email is not properly part of a Rule 11 agreement because she did not sign it and because the circumstances surrounding the agreement's formation were unconscionable and made the agreement unenforceable.

### A. Underlying law

Rule 11 was created to avoid disputes over the terms of oral settlement agreements. *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). Accordingly, courts are not to adhere too literally to the rule's language when enforcing its intent. *Kennedy v. Hyde*, 682 S.W.2d 525, 530 (Tex. 1984); *Thang v. Defy Int'l, LLC*, 712 S.W.3d 647, 663–65 (Tex. App.—Houston [14th Dist.] 2025, no pet.).

"A settlement agreement must comply with Rule 11 to be enforceable." *Padilla*, 907 S.W.2d at 460. Generally, that means it must be "in writing, signed and filed with the papers as part of the record" or "made in open court and entered of record." Tex. R. Civ. P. 11. The essential terms for a settlement agreement are the amount of compensation and the liability to be released. *Chowning v. Boyer*, No. 03-20-00387-CV, 2021 WL 3233859, at *6 (Tex. App.—Austin July 30, 2021, no pet.) (mem. op.) (collecting cases and citing *Padilla*, 907 S.W.2d at 460–61 (concluding that complete and enforceable agreement existed where terms included agreement to pay amount in exchange "for full and final settlement of this case")). "Parties may enter into a binding settlement agreement even if they contemplate that a more

formal document memorializing the agreement will be executed at a later date." *Andrews v. Deutsche Bank Nat'l Tr. Co.*, No. 03-11-00271-CV, 2012 WL 1581137, at *2 (Tex. App.—Austin May 3, 2012, no pet.) (mem. op.) (citing *Ronin v. Lerner*, 7 S.W.3d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).

A court can enforce a settlement agreement complying with Rule 11 even when one side no longer consents to the settlement. *Padilla*, 907 S.W.2d at 461. If a party withdraws its consent to a settlement agreement, the party seeking enforcement may file a motion to enforce the Rule 11 agreement as a binding contract under general contract law. *See id.*; *Chowning*, 2021 WL 3233859, at *6 (citing *Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996)). We review the trial court's ruling on whether to enforce a Rule 11 agreement under the same rules governing contract construction. *See Shamrock Psychiatric Clinic, P.A. v. Texas Dep't of Health & Human Servs.*, 540 S.W.3d 553, 561 (Tex. 2018).

We review a trial court's decision regarding enforcement of a Rule 11 agreement for abuse of discretion. *See Mantas*, 925 S.W.2d at 659; *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied). The test for abuse of discretion is whether the trial court acted without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial judge has no discretion in determining what the law is or in applying the law to the facts of a case. *Staley*, 188 S.W.3d at 336. In applying this standard, we defer to the trial court's factual determinations so long as they are properly supported by the record, and we review legal determinations made by the trial court de novo. *Eastman Gas Co., L.L.C. v. Goodrich Petroleum Co., L.L.C.*, 456 S.W.3d 319, 325 (Tex. App.—Texarkana 2015, pet. denied).

Morales contends that a signature block is not, absent other indicia, a signature for Rule 11 purposes. *See Cunningham v. Zurich Am. Ins.*, 352 S.W.3d 519, 530 (Tex. App.—Fort Worth 2011, pet. denied). In *Cunningham*, the court looked to the Texas codification of the Uniform Electronic Transactions Act (UETA) for guidance on how electronic documents can satisfy Rule 11's signature requirements. *Id.* at 529 (citing Tex. Bus. & Com. Code § 322.002). The statute provides that "electronic signature" "means an electronic sound, symbol, or process attached to . . . a record and executed or adopted by a person *with the intent* to sign the record." *Id.* at 530. The disputed agreement included an email from a party's attorney who closed her email with a printed signature block displaying her name and contact information. The court held that, while Rule 11 agreements could be formed through emails, an automatically appended block that had the sender's name and contact information was not a "signature" under Rule 11 absent some indication that it was typed by the sender or otherwise intended to be her signature. *Id.* The court held that the email did not have a signature because the block did not have an "/s/" followed by counsel's name or a graphic mark indicating the typewritten name was her signature. *Id.*

The Fourteenth Court of Appeals declined to follow *Cunningham* in *Thang.* 712 S.W.3d at 663–65. The *Thang* court noted that courts have routinely enforced Rule 11 agreements that were made by email. *See id.* at 663 (citing *Shamrock*, 540 S.W.3d at 561). It noted the Fort Worth Court of Appeals's reliance on UETA in *Cunningham* to resolve whether a Rule 11 agreement was "signed" was no longer tenable because the Texas version of UETA was amended after *Cunningham* to expressly exclude "enforceability . . . of a document in any form that is . . . governed by rules adopted by the supreme court . . . ." *See* Tex. Bus. & Com. Code

7

§ 332.003(e); *see also* Act of May 26, 2019, 86th Leg., R.S., ch. 606, § 7.01, sec. 332.003(e) 2019 Tex. Gen. Laws 1775, 1795; *see also Thang*, 712 S.W.3d at 662–63.

The Fourteenth Court held that a standard, printed signature block is sufficient to support formation of a Rule 11 agreement. *Thang*, 712 S.W.3d at 664. It emphasized that Rule 11 was adopted to avoid disputes over the terms of oral settlement agreements. *Id.* at 663 (citing *Padilla*, 907 S.W.2d at 461). The *Thang* court noted that, though a signature was traditionally the name of the signer handwritten in ink, a signature may also be "written in pencil, typed, printed, made with a rubber stamp, or impressed into the paper." *Id.* at 664 (quoting Restatement (Second) of Contracts § 134 cmt. A). In *Thang*, the parties exchanged a series of emails concerning settlement and release of claims in a dispute over a land sale of leased property. Each party's representative sent an email offering, modifying, and ultimately accepting the terms; each email had a "from" email address and closed with at least the first name of the sender. *Id.* at 656. The parties continued to negotiate the terms of the formal settlement document. *Id.* at 657. When one of the parties failed to sign the final documents, the original offeror amended its pleadings to request enforcement of the agreement contained in the original email exchange. *Id.* The *Thang* court held that the attorney of the recipient of the original offer sent a reply making the counteroffer that was accepted and that the other party had accepted the lawyer's printed name as a signature when the parties later drafted, exchanged, and modified formal settlement agreements. *Id.* at 664. The *Thang* court concluded:

> Regardless of whether parties to a Rule 11 agreement type their names with a typewriter, a computer keyboard, or a touchscreen, and regardless of whether they type their names in an email or create a "signature block" to be included with their email, the effect is the same. They have signed it.

8

*Id.*[2]

We are persuaded by the *Thang* court's reasoning concerning the applicability of automated signature blocks supporting formation of Rule 11 agreements.

## B. Application

Morales contends that her automatically generated email signature does not satisfy the Rule 11 signature requirement for creating an enforceable agreement under Texas law. She argues that the document contains no indication that she intended to sign the email and form a Rule 11 agreement, that the email does not meet the signature requirements for a court filing, that automatically affixed signature blocks are more like business cards than hand-written signatures affixed to letters, and that the circumstances make the Rule 11 agreement unconscionable and unenforceable.

### 1. Signature block

Morales contends that her email offer contains no indication that she intended to sign the email and form a Rule 11 agreement. She relies on Texas Rule of Civil Procedure 21(f)(7), which provides that filed documents are considered signed if the document includes an electronic or scanned image of a signature or an "/s/" and a name typed in the space where a signature would otherwise appear. Morales accurately observes that her "Settlement Offer" email contained neither, in contrast to the pleadings she filed when proceeding pro se on which she affixed an image of her handwritten signature.

---

[2] In *Thang*, the Fourteenth Court noted, without adopting, the First Court of Appeals holding that an email address in the "from" field of an email functions as a signature under UETA when assessing contract formation. *Thang v. Defy Int'l, LLC*, 712 S.W.3d 647, 663–65 (Tex. App.—Houston [14th Dist.] 2025, no pet.) (citing *Khoury v. Tomlinson*, 518 S.W.3d 568, 576–77 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). We likewise do not reach whether a mere email address in the "From" field of an email would support formation of a Rule 11 agreement.

Morales's argument that the signature block does not meet the standards for signatures on a court filing fails because the agreement is not a pleading. Rule 11 agreements are enforced as contracts, and courts accordingly have looked to the requirements under the statute of frauds. *See Padilla*, 907 S.W.2d at 460. This approach is consistent with the courts' ability to glean a Rule 11 agreement from a collection of emails from different parties—including the opposition—rather than a single pleading that conforms to Rule 21. *Shamrock*, 540 S.W.3d at 561 (noting that Rule 11 agreement may be formed with series of writings such as emails).

Morales's contention that automatically affixed signature blocks are more like business cards than hand-written signatures is a variation on a theme that is unavailing. This argument is not supported by statute or case law. Further, there is nothing preventing the signature block from being both signature and business card.

If we look beyond the objective nature of the signature block, there is evidence that Morales intended the email to be an offer that could be accepted to form an agreement. She titled the email "Settlement Offer." She showed settlement intent in the body of the email by stating that she made the "offer" to "be done" with Lowenberg. She offered to "relinquish all rights" to the dog even though Lowenberg pled only for a split possession. In return, Lowenberg would agree to cease contact with her and her family except through his lawyer. She wanted signed, mutual releases and discussed allocation of fees and costs. She asked that Lowenberg's lawyer pass the offer on to him and set an acceptance deadline of 5:00 p.m. She clearly offered to make an "agreement between attorneys or parties touching any suit pending" as described by Rule 11. *See* Tex. R. Civ. P. 11. The record supports the trial court's view that Morales's automatically included name at the bottom of the email served as a signature for Rule 11 purposes. *See Thang*, 712 S.W.3d. at 664.

## 2. Unconscionability and unenforceability

Morales contends that the circumstances make the Rule 11 agreement unconscionable and unenforceable, citing *Delfingen US-Tex., L.P v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App.—El Paso 2013, no pet.) (defining "unconscionability") and *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 135 (Tex. App.—Waco 2005, pet. denied) (holding that unconscionable contracts are unenforceable). Unconscionability has no precise legal definition. *Delfingen*, 407 S.W.3d at 798. To assess procedural unconscionability, we examine (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Id.* (citing *Ski River*, 167 S.W.3d at 136); *see also Angell v. Culpepper*, No. 03-19-00778-CV, 2021 WL 5018758, at *5 (Tex. App.—Austin Oct. 29, 2021, no pet.) (mem. op.). Gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms. *Ski River*, 167 S.W.3d at 136. Factors that may contribute to an unconscionable bargaining process include: (1) knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; and (2) knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement. *Id.*

Morales sent the "Settlement Offer" email at 2:48 a.m. when, she contends, she "was not in the right state of mind due to the immense pressure and emotional toll of the lawsuit." She asserts that she was representing herself, working full-time, and managing the

11

emotional strain of a dispute with her ex-boyfriend over her emotional-support dog. She faced the choice of missing a day of work to transport the dog to Austin or facing a contempt sanction. She had lost a lot of motions. Her offer of complete surrender exceeds the relief of evenly shared possession Lowenberg requested. She argues that "she never intended to completely relinquish all her rights" to the dog.

The record supports the trial court's rejection of Morales's arguments. Morales was under pressure of contempt, but she had alternatives of delivering the dog and continuing to resist the lawsuit. She demonstrated in making the offer her awareness that she could bargain with Lowenberg's attorney regarding the delivery date. Though relatively new to the field, she was a licensed attorney and in obtaining that license theoretically had learned the mechanics of contract formation. She made the first settlement offer and set the timeline. Though she gave up more possession than Lowenberg requested, she asked for more relief—the no-contact provision—then she had requested in her pleadings. The contract is not illegal or against public policy, and Morales's choice to surrender the dog rather than continue to share possession with someone she preferred to have no contact with is not unreasonable. There is no indication that Lowenberg was the stronger party or that Morales was in any way infirm, ignorant, illiterate, or unable to understand the language of the agreement she proposed. That she developed offeror's remorse after Lowenberg accepted her offer does not make the agreement unconscionable.

We overrule issue one and affirm the enforcement of the parties' agreement.

## II. Affirming the enforcement order moots the issues relating to the TRO.

By issues two and three, Morales argues that the TRO was void for procedural and substantive reasons. These issues were argued in the event we reversed the final enforcement order. The TRO was supplanted and the challenge to its merits was rendered moot

12

by the order resolving the merits of the case. *Cf. Isuani v. Manske-Shefield Radiology Grp., P.A.*, 802 S.W.2d 235, 236 (Tex. 1991) (holding appeal of temporary injunction mooted by final judgment). Moreover, TROs are not appealable. *See, e.g.*, *In re Office of Attorney Gen.*, 257 S.W.3d 695, 698 (Tex. 2008) (per curiam) (conditionally granting mandamus relief in part because relator lacked remedy by appeal for TRO).

We need not address the merits of issues two and three.

## III.     Some attorney's fees were erroneously awarded for temporary-injunction work.

Morales complains that the trial court erred by awarding attorney's fees for work unrelated to enforcement of the Rule 11 agreement. The trial court expressly awarded attorney's fees incurred "[A] as a result of Defendant Jacqueline Morales' breach of the parties Rule 11 Settlement Agreement and [B] in order to enforce the parties' Rule 11 Settlement Agreement." Morales does not challenge the fees awarded in category B[3] but contends that Lowenberg is not entitled to fees for preparation for the temporary-injunction hearing that was not part of the enforcement action.

Lowenberg argues that he is entitled to the attorney's fees incurred to prepare for the temporary-injunction hearing because, but for Morales's breach of the settlement agreement, he would not have incurred those fees. The Texas Supreme Court held generally that, "[i]n an action for breach of contract, actual damages may be recovered when the loss is the 'natural

---

[3] A litigant can recover reasonable attorney's fees incurred to enforce a contract. Tex. Civ. Prac. & Rem. Code § 38.001(b)(8). A Rule 11 agreement is enforceable as a contract. *See Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914 (Tex. App.—Austin 2010, no pet.). The unjustified breach of a settlement agreement exposes the breaching party to paying the attorney's fees incurred by the non-breaching party "in connection with its attempts to enforce the Rule 11 Agreement." *American Fisheries, Inc. v. National Honey, Inc.*, 585 S.W.3d 491, 505 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Garcia v. Harding*, 545 S.W.3d 8, 12 (Tex. App.—El Paso 2017, no pet.). Thus, the trial court did not err in awarding Lowenberg attorney's fees incurred to enforce the settlement agreement.

13

probable, and foreseeable consequence of defendant's conduct.'" *Mead v. Johnson Grp.*, 615 S.W.2d 685, 687 (Tex. 1981). Building on that precedent, the Waco court held that a litigant can recover "prior attorney's fees" that were incurred in litigation that continued because of the breach of a settlement agreement. *Ganske v. WRS Grp., Inc.*, No. 10-06-00050-CV, 2007 WL 1147357, at *3–4 (Tex. App.—Waco Apr. 18, 2007, no pet.) (mem. op.). The Waco court reversed a trial-court judgment that denied attorney's fees incurred in defending against claims that were settled by a Rule 11 agreement and that nevertheless, because of a breach of that agreement, continued to be litigated. *Id.* at *1. It wrote that "[t]here could be no more foreseeable consequence of a breach of the settlement agreement than the cost of litigation that it was specifically designed to avoid" and that "[t]here is nothing sacrosanct about attorney's fees per se that forbids their award as damages." *Id.* at *3 (quoting *Nationwide Mut. Ins. v. Holmes*, 842 S.W.2d 335, 342 (Tex. App.—San Antonio 1992, pet. denied) (awarding prior attorney's fees as actual damages in DTPA claim)).

Since the Waco court's opinion in *Ganske*, however, the Texas Supreme Court has plainly stated that attorney's fees incurred in the prosecution or defense of a claim are not compensatory damages. *In re Nalle Plastics Fam. L.P.,* 406 S.W.3d 168, 172 (Tex. 2013) (orig. proceeding). The Amarillo Court of Appeals applied that concept to attorney's fees incurred in continued litigation of a suit that had been settled by agreement. *See Wang v. Whittenburg*, 726 S.W.3d 516, 519 (Tex. App.—Amarillo 2025, pet. granted); *see also Haubold v. Medical Carbon Rsch. Inst., LLC*, No. 03-11-00115-CV, 2014 WL 1018008, at *6 (Tex. App.—Austin Mar. 14, 2014, no pet.) (mem. op.). The Amarillo court squarely rejected a request for attorney's fees as the lost "benefit of the bargain" when a settlement agreement was breached causing further litigation and attorney's fees as "consequential damages" from that breach. *Wang*,

14

726 S.W.3d at 518–19.  That court pointed to previous cases holding that attorney's fees as consequential damages to the breach of a Rule 11 agreement were not available.  *See id.* at 519 (discussing *Tomorrow Telecom, Inc. v. Johnson*, No. 07-19-00427-CV, 2021 WL 937121 (Tex. App.—Amarillo Mar. 11, 2021, no pet.) (mem. op) & *Berg v. Wilson*, 353 S.W.3d 166 (Tex. App.—Texarkana 2011, pet. denied)).  Lowenberg's attorney's fees strictly in preparation for the temporary-injunction hearing—a hearing that did not happen and a motion on which he did not prevail—fall into this precluded category.

Lowenberg's attorney filed an affidavit supporting the award of attorney's fees and attached a billing summary describing work done and hours spent on those tasks.  Morales highlights five entries from the billing summary as relating to the temporary-injunction hearing. Two of the entries are not shown to be specifically tied to the temporary injunction and are consistent with work supporting Lowenberg's basis for recovery:  "Bates label supplemental document production" and "Call with Jesus Lowenberg regarding upcoming hearing and address questions regarding potential testimony."  The record does not support reversing these fees. Three entries are expressly limited to the temporary-injunction hearing:  "Preparation for hearing on temporary injunction," "Work on draft cross examination in preparation for hearing on temporary injunction," and "Review and analyze Defendant's Response to Application for Temporary Injunction."  As these entries describe work done specifically to prepare for the temporary-injunction hearing, we conclude that they were not properly part of the attorney's fees award for enforcement of the Rule 11 agreement.  The fees for these entries total $1,015.  We sustain in part issue four.

## CONCLUSION

We therefore modify the Order Granting Motion to Enforce Settlement Agreement by reducing the attorney's fees award to $6,555 and affirm the order as modified.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed in Part; Modified and, as Modified, Affirmed in Part

Filed:   May 28, 2026