COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| READYONE INDUSTRIES, INC., | | |
| | § | No. 08-14-00135-CV |
| Appellant, | | |
| | § | Appeal from the |
| v. | | |
| | § | County Court at Law No. 5 |
| ROBERT CASILLAS, | | |
| | § | of El Paso County, Texas |
| Appellee. | | |
| | § | (TC# 2013-DCV-3700) |

## O P I N I O N

In this worker's compensation nonsubscriber tort case, ReadyOne Industries, Inc. appeals the order denying its motion to compel arbitration. We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

Alleging he sustained an on-the-job injury, Robert Casillas sued ReadyOne for negligence. After answering, ReadyOne moved to compel arbitration and to stay the proceedings pending arbitration pursuant to an agreement signed by Casillas. In support of its motion, ReadyOne submitted the affidavit of its Director of Human Resources and Compliance, Guadalupe Madrid, and the following four documents:

> (1) the Mutual Agreement to Arbitrate (MAA) printed in English and Spanish and adopted by ReadyOne effective October 1, 2007;
>
> (2) a Receipt and Arbitration Acknowledgment printed in English and signed by

Casillas on August 9, 2010;

(3) ReadyOne's Employee Injury Benefit Plan (Plan) printed in English for injuries occurring on or after October 1, 2007; and

(4) the Summary Plan Description of the Employee Injury Benefit Plan (SPD) printed in English and Spanish for injuries occurring on or after October 1, 2007.

Casillas responded by raising several defenses to arbitration. Chief among them were his assertions that the MAA was unenforceable because it is illusory and procedurally unconscionable.

Casillas asserted the arbitration agreement is illusory because it permits ReadyOne to amend, modify, or terminate it at any time. His assertion is based on the theory that the MAA is incorporated by reference in the SPD and the Plan, and therefore, the provisions for termination and amendment in these documents apply rather than the termination provision in the MAA. Alternatively, Casillas asserted that, if the MAA is a stand-alone document, it is procedurally unconscionable because it was deliberately attached to, and made part of, the SPD and the Plan "to create the illusion that employees are required to sign the arbitration agreement it [sic] in order to be eligible for and receive the injury benefit plan benefits if they get hurt." In support of this assertion, Casillas attached his affidavit describing the circumstances surrounding the execution of these documents.

Following a hearing, the trial court entered an order denying the motion to compel arbitration without identifying the basis for its ruling. On appeal, ReadyOne addresses each of the defenses raised by Casillas in the trial court.

## DENIAL OF ARBITRATION

In its sole issue, ReadyOne contends the trial court erred by refusing to compel arbitration.

We agree.

### *Standard of Review*

We review a trial court's decision to grant or deny a motion to compel arbitration for an abuse of discretion. *ReadyOne Indus., Inc. v. Flores*, 460 S.W.3d 656, 661 (Tex.App.--El Paso 2014, pet. denied). Accordingly, we defer to the trial court's factual determinations, if supported by the record, but review its legal conclusions *de novo*. *Id*. Because the issue on appeal concerns the enforceability of the arbitration agreement, we review it *de novo*.

### *Applicable Law*

A party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claim asserted by the party opposing arbitration falls within the scope of the agreement. *Id*.

Because arbitration is a creature of contract, we apply state contract law principles to determine whether an enforceable agreement exists in the first instance and whether generally applicable contract defenses may be applied to invalidate the arbitration agreement. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)(orig. proceeding). If we determine a valid arbitration agreement exists, a presumption favoring arbitration arises by operation of law and the burden shifts to the party opposing arbitration to establish a defense to enforcement of the agreement. *Flores*, 460 S.W.3d at 661. Although a party may argue a contract was never formed, by signing a contract, he is presumed to have read it and grasped its contents and legal effects. *In re Prudential Co. of Am.*, 148 S.W.3d 124, 134 (Tex. 2004); *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 801 (Tex.App.--El Paso 2013, no pet.).

### *Discussion*

3

ReadyOne established the existence of a valid agreement to arbitrate Casillas's negligence claim against it, and he failed to raise any meritorious defenses to enforcement of the agreement.

### 1. Existence of a Valid Arbitration Agreement Encompassing Negligence Claim

The party alleging the existence of a valid arbitration agreement encompassing a claim asserted against it by the party opposing arbitration must present summary proof that an agreement to arbitrate requires arbitration of the dispute. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992)(orig. proceeding). A party can satisfy its evidentiary burden by submitting authenticated copies of an agreement containing an arbitration clause. *Flores*, 460 S.W.3d at 662. This is what ReadyOne has done. As mentioned earlier, ReadyOne submitted copies of the MAA, which encompasses negligence claims arising from on-the-job injuries, and the Receipt and Arbitration Acknowledgment in support of its motion to compel. These two documents are authenticated by Madrid's affidavit. By signing the Receipt and Arbitration Acknowledgment, Casillas is presumed to have read it and understood its legal effects. *See In re Prudential Co. of Am.*, 148 S.W.3d at 134; *Delfingen*, 407 S.W.3d at 802. Accordingly, we conclude that a valid arbitration agreement exists between ReadyOne and Casillas and that his negligence claim falls within its scope.

### 2. Lack of Meritorious Defenses to Enforcement of the MAA

Because ReadyOne demonstrated the MAA is a valid arbitration agreement encompassing Casillas's negligence claim against it, the burden shifted to Casillas to establish a meritorious defense to enforcement of the MAA. Although he raised several "defenses" in the trial court, none are meritorious. Consequently, Casillas failed to meet his burden.

### a. Illusoriness

4

Casillas asserts the MAA is illusory and, thus, invalid because it bestows upon ReadyOne the unilateral right to terminate it at any time. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010)(arbitration agreement is illusory if one party can avoid its promise to arbitrate by unilaterally amending or terminating arbitration provision). At the heart of Casillas's assertion is his contention that the MAA is incorporated by reference in the SPD and the Plan. Therefore, according to Casillas, the provisions for termination and amendment in these documents apply rather than the termination provision in the MAA. He is mistaken.

The MAA is a five-page, thirteen-paragraph document requiring ReadyOne and Casillas to arbitrate covered claims arising on or after October 1, 2007. Paragraph 5 addresses the scope of the agreement to arbitrate and provides: "[t]his Agreement is mutual, covering all claims that Company or Claimant may have which arise from . . . [a]ny injury suffered by Claimant while in the [c]ourse and [s]cope of Claimant's employment with Company[.]" Paragraph 10, titled "Termination of Agreement," states:

> Company shall have the right to prospectively terminate this Agreement. Termination is not effective for Covered Claims which accrued or occurred prior to the date of the termination. Termination is also not effective until ten (10) days after reasonable notice is given to Claimant.

This provision is not illusory because it does not permit ReadyOne to unilaterally or retrospectively terminate the agreement and requires ReadyOne to provide ten days' notice to prospectively terminate. *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002)(holding that language preventing an employer from retroactively applying arbitration agreement changes to claims of which it had actual knowledge, combined with a provision furnishing ten days' advance notice to employees before unilateral termination of the agreement, rendered the agreement non-illusory because it restricted the employer from "avoid[ing] its promise to arbitrate by

5

amending the provision or terminating it altogether"); *ReadyOne Indus., Inc. v. Carreon*, 458 S.W.3d 621, 623-24 (Tex.App.--El Paso 2014, no pet.)(holding that provision identical to the one in this case contains the proper savings clause under *Halliburton* and is not illusory).

Casillas maintains the trial court could have concluded the parties intended to be bound, not by Paragraph 10 of the MAA, but by the termination and amendment provisions in the Plan and the SPD, which permit ReadyOne to unilaterally modify or amend them without notice. In the Plan, these provisions state:

> 12.1 **Termination and Amendment**. The Company shall have the right and power at any time and from time to time to amend this Plan, in whole or in part, on behalf of all Employers, and at any time to terminate this Plan or any Employer's participation hereunder; provided, however, that no such amendment or termination shall reduce the amount of any benefit then due and payable to, or with respect to, a Participant under the Plan in connection with an Injury occurring prior to the date of such amendment or termination. Any such amendment or termination shall be pursuant to formal written action of a representative authorized to act on behalf of the Company. This Plan document shall also automatically cease to be effective for all purposes as of the date of the cancellation, final expiration, or non-renewal of a Comprehensive Employers Indemnity policy issued to the Company through The Combined Group, except for purposes of the administration of any open claims occurring prior such date. Only the Company's proper adoption of another, successor benefit plan document can prevent such automatic termination of this Plan.

In the SPD, these provisions state:

> **AMENDMENT OR TERMINATION OF PLAN**
>
> The Company presently intends to continue the Plan indefinitely, but the Company reserves the right to amend, modify, or terminate the Plan at any time; provided, however, no amendment or termination of the Plan will reduce the amount of any benefit then due and payable under the Plan to or with respect to you in connection with an Injury occurring prior to the date of such amendment or termination. Any such amendment or termination will be adopted pursuant to formal written action of a representative authorized to act on behalf of the Company.

The trial court could have so concluded, according to Casillas, by resolving certain latent

6

ambiguities concerning the make-up of the parties' agreement and the meaning of certain phraseology in the MAA in his favor in unity with the pertinent rules of contract construction. Contrary to Casillas's assertion, neither the phraseology in the MAA nor the make-up of the parties' agreement is ambiguous.

Whether an arbitration agreement is ambiguous is a question of law subject to *de novo* review. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). Ambiguity is determined by examining the contract as a whole in light of the circumstances existing when the contract was executed. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *IHR Security, LLC v. Innovative Bus. Software, Inc.*, 441 S.W.3d 474, 478 (Tex.App.--El Paso 2014, no pet.). We examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *IHR Security*, 441 S.W.3d at 478. The entire document is examined in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *MCI Telecomm. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999); *IHR Security*, 441 S.W.3d at 478. We presume the parties to a contract intend every clause to have some effect. *Heritage Res.*, 939 S.W.2d at 121; *IHR Security*, 441 S.W.3d at 478.

Contract language subject to a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *Coker*, 650 S.W.2d at 393. If a contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, then it is ambiguous and creates a fact issue concerning the parties' intent. *J.M. Davidson, Inc. v. Webster*, 128

7

S.W.3d 223, 229 (Tex. 2003); *IHR Security*, 441 S.W.3d at 478; *Daftary v. Prestonwood Mkt. Square, Ltd.*, 404 S.W.3d 807, 813 (Tex.App.--Dallas 2013, pet. denied).

As mentioned earlier, Casillas contends certain phraseology in the MAA renders it ambiguous. Specifically, he argues the term "Program Agreement" in the MAA "mean[s] something other than only the MAA, because the MAA is defined as 'Agreement' in the MAA." We agree the agreement is referred to as the "Agreement" throughout the MAA but also referred to as the "Arbitration Program" in Paragraph 8. We also recognize the term "Program Agreement" is used in Paragraph 12, which is titled "Sole and Entire Agreement" and provides as follows:

> This Program Agreement constitutes the parties' complete agreement and supersedes any prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement. Any agreement contrary to, or modifying, any of the provisions included in this Agreement must be entered into, in writing, by the chief executive officer of Company. Oral representations made before or after Employee is hired do not alter this Agreement.

But we disagree with the notion the parties intended the term "Program Agreement" to "mean[] something other than only the MAA[.]" The fact that the term "Program Agreement" is not used anywhere else in the MAA does not necessarily mean it is susceptible to more than one meaning. Paragraph 12 states the agreement supersedes any "prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement." The MAA defines "Covered Claims" as any and all claims included in or described by Paragraph 5(a) and it specifically excludes from its reach "[c]laims for benefits under the Company's Employee Injury Benefit Plan." When Paragraph 12 is considered as part of the entire MAA, it is obvious the phrase "This Program Agreement" is referring only to the parties' agreement to arbitrate covered claims. Because this term has a certain or definite meaning, the MAA is not ambiguous.

Casillas also contends the make-up of the parties' agreement is ambiguous. He posits this

8

is so because ReadyOne submitted not only the MAA and Receipt and Acknowledgment but also the Plan and the SPD in support of its motion to compel arbitration. But apart from his postulation, Casillas does not explain why this is necessarily so. He seems to suggest the submission of the Plan and the SPD alongside the MAA and Receipt and Acknowledgment indicates ReadyOne does not believe the MAA constitutes the parties' agreement to arbitrate. This suggestion is belied by the record and our conclusion that the MAA is a stand-alone document constituting the parties' agreement to arbitrate.

In sum, Casillas's illusory defense provides no basis for denying ReadyOne's motion to compel arbitration. Thus, to the extent the trial court relied on this defense in denying the motion, it erred.

### b. *Procedural Unconscionability*

Casillas alleges the MAA is invalid because it is procedurally unconscionable. Specifically, he contends ReadyOne, by presenting the MAA, the Receipt and Acknowledgment, the Plan, and the SPD all at one time, "mislead [him] into believing the purpose of the documents presented to him was for him to be eligible to receive benefits under the Plan." As factual support for his contention, Casillas directs our attention to his affidavit describing the circumstances surrounding the execution of these documents. In his affidavit, Casillas avers that, although he was required to sign many documents, he: (1) was not given time to review them; (2) was not informed of their contents; and (3) did not remember signing the MAA. Contrary to Casillas's assertion, there is no evidence ReadyOne affirmatively misrepresented the contents of the documents or he was prevented by trick or artifice from reading the MAA and the Receipt and Acknowledgment.

In determining whether a contract is procedurally unconscionable, we examine: (1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Delfingen*, 407 S.W.3d at 798. The totality of the circumstances must be assessed when the contract was formed, and we may not intercede unless the circumstances surrounding the negotiations are sufficiently shocking. *Id*.

Citing *Delfingen*, Casillas argues the trial court could have believed his affidavit and could have concluded the statements made in his affidavit establish procedural unconscionability. In *Delfingen*, we upheld the trial court's order refusing to compel arbitration because the evidence established the plaintiff was illiterate in English, Spanish language versions of the documents in question were not provided to the plaintiff, and, according to him, a representative of the defendant affirmatively misrepresented the contents of the arbitration agreement. *Delfingen*, 407 S.W.3d at 801-02. Because these circumstances are not present here, *Delfingen* is distinguishable. Casillas stated he had "limited ability in reading, writing or understanding English" but did not aver he is illiterate. In any event, ReadyOne furnished him with Spanish-language versions of the MAA and the SPD. Significantly, Casillas never testified that a ReadyOne representative *affirmatively* misrepresented the contents of any of the document provided to him. Nor is there any evidence he was mentally incapacitated when he signed the Receipt and Acknowledgment. Given the absence of evidence denoting a coercive environment, Casillas is presumed to have read and understood the documents given to him. *Delfingen*, 407 S.W.3d at 802.

In sum, the record does not support the conclusion that Casillas established procedural

10

unconscionability. Consequently, to the extent the trial court denied ReadyOne's motion to compel arbitration on this basis, it erred.

### c. Applicability of the Federal Arbitration Act (FAA)

Casillas alleged the Federal Arbitration Act (FAA) does not govern the MAA because there is no evidence he was "working 'in' commerce, was . . . producing goods for commerce, and was … engaged in activity that affected commerce." In other words, Casillas argued, for the FAA to govern the MAA in this case, he must have been personally engaged in interstate commerce and, in support of his argument, cited *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).[1] But we rejected this argument in *Flores*. There, we concluded the FAA applied to the arbitration agreement in dispute because the parties expressly agreed to arbitrate under the FAA and ReadyOne presented evidence it was regularly engaged in interstate commerce. *Flores*, 460 S.W.3d at 662. For these same reasons, we reach an identical conclusion in this case. Here, as in *Flores*, the MAA contains a provision stating it is governed by the FAA and ReadyOne adduced evidence indicating it is regularly engaged in interstate commerce. In short, Casillas's *Bernhardt* argument offers no support for the trial court's denial of ReadyOne's motion to compel arbitration. Therefore, to the extent the trial court denied the motion on the basis the FAA is inapplicable, it erred.

### d. Evisceration of Texas's Workers Compensation Scheme

Casillas also suggested, despite authority to the contrary, that "Congress never intended the

---

[1] In *Bernhardt*, the plaintiff and the defendant executed an employment contract containing an arbitration provision. *Bernhardt v. Polygraphic Co. of Am.*, 218 F.2d 948, 949 (2nd Cir. 1955). Following his discharge as superintendent of the defendant's lithograph plant in Vermont, the plaintiff sued the defendant in a Vermont state court for breach of contract. *Id*. The Second Circuit of Appeals held that the FAA applied to the employment contract. *Id*. at 949-50. But the U.S. Supreme Court held otherwise, concluding that the contract did not evidence a transaction involving commerce within the meaning of Section 2 of the FAA, and there was no evidence that the plaintiff, while performing his duties under the employment contract, was working in commerce, producing goods for commerce, or was engaging in activity that affected commerce. *Bernhardt*, 350 U.S. at 200-01, 76 S.Ct. at 275.

[FAA] to apply in state court . . . [or] to pre-empt state workers compensation schemes." *See Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 104 S. Ct. 852, 858, 79 L.Ed.2d 1 (1984)(holding that Congress intended the FAA to apply in state courts and to pre-empt state anti-arbitration laws); *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 890 (Tex. 2010)(same). In pursuing his argument, Casillas urged the trial court—and us, by extension—to overrule this precedent and "hold that the [FAA] does not apply in every state court proceeding." We decline Casillas's entreaty. As an intermediate state appellate court, we are bound to apply the controlling law as interpreted by this state's highest court. Accordingly, Casillas's argument that Congress did not intend the FAA to apply in state-court proceedings is not a valid basis for denying ReadyOne's motion to compel arbitration. Thus, to the extent the trial court denied the motion on this basis, it erred.

### e.   *Violation of the Tenth Amendment*

Casillas further argued "any attempt by the FAA to trump the Texas Workers Compensation Act or the Texas Arbitration Act" violates "the l0th Amendment to the U.S. Constitution." In raising this argument, Casillas conceded the Texas Supreme Court held the opposite in *In re Odyssey Healthcare* but insisted the Court got it wrong. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 423-24 (holding that the FAA does not violate the Tenth Amendment). Again, we reiterate, as an intermediate state appellate court, we may not depart from existing, controlling precedent and substitute our judgment and analysis for that of the *In re Odyssey Healthcare* court. Reexamining the question of whether compliance with the FAA directly impairs the State of Texas's ability to structure integral operations in areas of traditional government functions must be undertaken by the Texas Supreme Court. Accordingly, Casillas's

12

argument that the FAA violates the Tenth Amendment provides no valid basis for denying ReadyOne's motion to compel arbitration. Consequently, to the extent the trial court denied the motion on this basis, it erred.

### f. Unenforceable Under Section 171.002 of the Texas Civil Practice and Remedies Code

Casillas maintained the MAA is unenforceable under Section 171.002 of the Texas Civil Practice and Remedies Code because neither he nor his attorney signed it. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(3),(c)(West 2011)(providing that the Texas General Arbitration Act does not apply to a personal injury claim unless each party and his attorney sign the arbitration agreement). But we recently considered and rejected this argument in *Flores*. *See* 460 S.W.3d at 668-69. There, we observed the Texas Supreme Court held in *In re Olshan* that Section 2 of FAA, which preempts state law that would otherwise render arbitration agreements unenforceable in a contract involving interstate commerce, applied to Section 171.002. *See id.*; *In re Olshan*, 328 S.W.3d at 890. Here, as in *Flores*, there is no question the arbitration agreement involves interstate commerce, and Casillas does not acknowledge, let alone distinguish *In re Olshan*, nor does he direct us to any authority to the contrary. Thus, for the reasons articulated in *Flores*, we reach a similar conclusion in this case. Hence, to the extent the trial court denied ReadyOne's motion to compel arbitration on the ground the MAA is unenforceable under Section 171.002, it erred.

### g. Unenforceable Under Section 406.033 of the Texas Labor Code

Lastly, Casillas argued the MAA is unenforceable under Section 406.033(a) of the Texas Labor Code because he was asked to waive his right to a jury trial before being injured. *See* TEX.LABOR CODE ANN. § 406.033(e)(West 2015)(providing that a pre-injury agreement waiving

13

an employee's non-subscriber negligence claim is void and unenforceable). But Casillas's argument is unavailing because an agreement to arbitrate constitutes, not a waiver of a cause of action or the rights provided under Section 406.033(a), but an agreement to litigate certain claims in a specific forum. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 423; *In re Golden Peanut Co., LLC*, 298 S.W.3d 629, 631 (Tex. 2009); *Flores*, 460 S.W.3d at 668. Accordingly, Section 406.033(e) does not render the MAA in this case void. Consequently, to the extent the trial court concluded otherwise, it erred in denying ReadyOne's motion to compel arbitration on this basis.

## CONCLUSION

For the reasons stated above, we conclude the trial court abused its discretion by denying ReadyOne's motion to compel arbitration on any of the defenses to arbitration raised by Casillas in his response. Therefore, we sustain ReadyOne's issue, reverse the trial court's order denying ReadyOne's motion to compel arbitration, and remand the cause to the trial court for proceedings consistent with this opinion.

December 18, 2015                                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Chew, C.J. (Senior Judge)
Chew, C.J., (Senior Judge), sitting by assignment, Concurring

14