

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00429-CV

**TEXAS FIRST RENTALS, LLC**,
Appellant

v.

**MONTAGE DEVELOPMENT CO., LLC** and Derick Murway,
Appellees

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-08101
Honorable Tina Torres, Judge Presiding

Opinion by:　Rebeca C. Martinez, Chief Justice

Sitting:　　　Rebeca C. Martinez, Chief Justice
　　　　　　　Beth Watkins, Justice
　　　　　　　Sandee Bryan Marion, Chief Justice (Retired)[1]

Delivered and Filed: August 16, 2023

DISMISSED IN PART; AFFIRMED IN PART; REVERSED IN PART; REMANDED

　　　Texas First Rentals, LLC ("TFR") appeals from an order denying its motion to compel arbitration and from an order denying its motion for reconsideration. We hold the trial court erred by denying TFR's motion to compel arbitration as to its claims against Montage Development Co., LLC ("Montage") related to a single rental contract. Accordingly, we reverse the trial court's order and remand with instructions to compel arbitration and stay proceedings as to those claims.

---

[1] Retired Fourth Court of Appeals Chief Justice Sandee Bryan Marion sitting by assignment. *See* TEX. GOV'T CODE ANN. § 74.003.

We otherwise affirm the trial court's order denying TFR's motion to compel arbitration. Additionally, we dismiss the portion of TFR's appeal challenging the trial court's order denying its motion for reconsideration because we lack jurisdiction over that part of the appeal.

BACKGROUND

On November 6, 2019, Montage submitted an "Application for Credit" with TFR, a company which rents construction equipment. The Application lists Derick Murway as Montage's "owner or president," and Murway signed the Application as Montage's "principal" and "managing member." According to an Application term, Murway, by signing, recognized that his credit history could be used as a factor in TFR's credit evaluation.

The Application for Credit states that Montage,

acknowledges and agrees to the following:

1. . . . (a) all purchases/rentals made by [Montage] from [TFR] are subject to the Terms and Conditions contained herein; (b) [Montage] has received, read, understands and accepts all of the terms and conditions of TFR's Rental Contract; . . . .

2. . . . Rentals by TFR to [Montage] made subsequent to the acceptance of this application by TFR shall be governed by the Rental Contract pertaining to such rental and by this Agreement. In the event that any provisions of the Rental Contract shall conflict with any provision of this Agreement, the Rental Contract shall control.

The Application does not define "Rental Contract," and no contract is attached.

In 2022, TFR sued Montage and Murway, alleging they failed to pay for equipment rented in 2021. TFR asserted a breach of contract claim against Montage and filed its claim as a suit on a sworn account. *See* TEX. R. CIV. P. 185. TFR also asserted a claim against both Montage and Murway for violations of the Texas Trust Fund Act. *See* TEX. PROP. CODE ANN. §§ 162.001–.033. In its breach of contract claim, TFR alleged that the amount due at the time of filing was $48,789.63. In its Texas Trust Fund Act claim, TFR alleged that Murway, in his management

capacity, received and controlled funds received by Montage for the use of TFR's equipment and that Murway failed to remit the funds to TFR. TFR attached to its petition an affidavit by Corey Woods, its Financial Services Manager, verifying the amount it alleged was owed.

Montage and Murway filed a motion to transfer venue and an original answer, and TFR filed a motion to compel arbitration and to stay proceedings. Attached to TFR's motion is an affidavit by Woods in support. The affidavit authenticates a copy of the Application for Credit and "true and correct cop[ies] of the Rental Agreements," which are attached as Exhibits A-1 to A-5. Woods avers: "The Rental Agreements contain an arbitration provision, which provides, in part, that the parties shall submit to binding arbitration any 'any [sic] dispute arising out of or relating to this transaction.'"

Attachments A-1 to A-5 of Woods's affidavit include some or all of the following documents: a "Rental Out," a "Pickup Ticket," a "4 Week Bill," and a "Rental Invoice." Each exhibit, A-1 to A-5, relates to one of five specific contracts for equipment rentals:

- Contract 1161827—Attachment A-1 includes a Rental Invoice (1 page), another Rental Invoice (1 page), a Rental Out (2 pages), another Rental Out (1 page), a 4 Week Bill (1 page); and another 4 Week Bill (1 page).

- Contract 1161701—Attachment A-2 includes a Rental Invoice (1 page), and a Pickup Ticket (2 pages).

- Contract 1162465—Attachment A-3 includes a Rental Invoice (1 page), a Rental Out (1 page), another Rental Out (2 pages), a 4 Week Bill (1 page), and a Pickup Ticket (2 pages).

- Contract 1164701—Exhibit A-4 includes a Rental Invoice (1 page), another Rental Invoice (1 page), another Rental Invoice (1 page), another Rental

Invoice (2 pages); a Rental Out (2 pages), another Rental Out (2 pages), a 4 Week Bill (1 page); another 4 Week Bill (1 page), another 4 Week Bill (1 page), a Pickup Ticket (2 pages), and another Pickup Ticket (2 pages).

- Contract 1170368—Exhibit A-5 includes a Rental Invoice (1 page), and a Pickup Ticket (2 pages).

The Rental Outs, Pickup Tickets, 4 Week Bills, and Rental Invoices include specific contract numbers, customer information, and rental information on their first pages. Based on how these forms have been filled out, it appears that the Rental Out form is used when TFR releases equipment to a customer, and the Pickup Ticket form is used when equipment is returned to TFR. The 4 Week Bill form and the Rental Invoice form reflect, respectively, installment billing and billing after equipment has been returned.[2] At the bottom of each of the four forms is the statement: "Conditions of Rental, Read Front & Reverse Side." In the bullet points above, if a form is shown as comprising two pages, then it includes a second page containing "Additional Terms and Conditions." This second page is identical across the four forms whenever it is included. However, as reflected in the paragraph above, when a form is shown as comprising a single page, it does not have a reverse side. Most of the forms are unsigned. Additionally, as reflected above, Exhibits A-2 and A-5 do not include a Rental Out form. Moreover, some of the Rental Out forms state a printing date that is after the date the equipment is listed as being delivered to Montage. Only one of the Rental Out forms — a Rental Out form in Exhibit A-4 — is both signed and printed on the date listed as the date the equipment was delivered.

---

[2] TFR's counsel confirmed this understanding of the forms at the hearing on the motion for reconsideration:

> Now, rental invoices are invoices. Those are not rental contracts. The rental out documents . . . those have terms and conditions. They say a contract date, they say a contract number, they say additional terms of that contract. Those are the contracts we are talking about.

When included, the second/reverse page comprising Additional Terms and Conditions includes the following language:

> ARBITRATION: Parties agree to submit to binding arbitration for any dispute arising out of or relating to this transaction. Either party may initiate arbitration which shall be conducted in accordance with commercial arbitration rules of the American Arbitration Association, in San Antonio, Bexar County, Texas. Each party shall bear its own costs and attorney's fees unless the arbitrators award such fees to a party, each party shall share equally the cost of the arbitration.

Montage and Murway filed a response opposing arbitration. They argued there is no enforceable agreement to arbitrate because the "documents in place at the time of the purported rentals that are attached to [TFR's] Arbitration/Stay Motion do not contain an arbitration clause." At the hearing on TFR's motion, Montage and Murway's counsel stated there was no arbitration term in the Application for Credit. As to Exhibits A-1 to A-5, counsel argued the documents do not reflect a rental agreement because the Rental Outs, Pickup Tickets, 4 Week Bills, and Rental Invoices were not signed and were printed after the date the equipment was released to Montage. Montage and Murway's counsel argued that Exhibits A-1 to A-5 reflect an unsuccessful attempt by TFR to impose additional terms or modifications after rental contracts had been formed when the equipment was delivered to Montage. Counsel, however, did not review all of the Rental Agreements separately.

The trial court denied TFR's motion, and TFR filed a motion to reconsider, including the same exhibits and providing new authority regarding incorporation by reference. TFR argued that Montage agreed to arbitration when it signed the Application for Credit, which, according to TFR, incorporated the arbitration provision within the Additional Terms and Conditions contained in some of the forms attached as Exhibits A-1 to A-5. At the hearing on the motion for reconsideration, Montage and Murway's counsel made the same arguments as previously, but this time, he went through all five exhibits separately. Counsel argued that only the fourth contract,

reflected in Exhibit A-4, includes a signed Rental Out form that was printed on the same date that the equipment was released to Montage. Therefore, according to counsel, "The best they do is one out of five," in terms of Rental Agreements with an arbitration provision.

The trial court denied TFR's motion to reconsider, and TFR appealed both from the denial of its motion to compel arbitration and from the denial of its motion for reconsideration.

## DISCUSSION

### I. Jurisdiction

We must first consider our jurisdiction, *sua sponte*. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004). To begin, we note that our jurisdiction determination is not controlled by whether the Federal Arbitration Act ("FAA"), the Texas Arbitration Act ("TAA"), or both apply; therefore, we do not resolve the matter. *See Allegheny Millwork, Inc. v. Honeycutt*, No. 05-21-00113-CV, 2022 WL 2062876, at *3 n.3 (Tex. App.—Dallas June 8, 2022, pet. denied) (mem. op.) (not resolving matter of whether FAA or TAA applies because resolution would not affect outcome).

TFR asserts that the Additional Terms and Conditions page, which is included on some, but not all of the Rental Out forms, includes a binding arbitration provision. This provision does not specify whether the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA") applies, and TFR has sought to enforce arbitration under both acts. The FAA and TAA are not mutually exclusive, and the FAA only preempts the TAA in situations in which the TAA would refuse enforcement of an arbitration agreement that the FAA would enforce. *See In re D. Wilson Constr.*, 196 S.W.3d 774, 779 (Tex. 2006); *see also In re Devon Energy Corp.*, 332 S.W.3d 543, 547 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Neither party specifically argues for preemption nor asserts the application of one act to the exclusion of the other. Our analysis below concerns whether the parties agreed to an arbitration provision, and, under both the FAA and TAA,

we apply ordinary state contract law principles to reach our decision. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 781; *Sporran Kbusco, Inc. v. Cerda*, 227 S.W.3d 288, 291 (Tex. App.—San Antonio 2007, pet. denied). Consequently, we need not resolve whether one or both acts apply.

Regardless, we do not have jurisdiction over TFR's appeal from the trial court's denial of its motion for reconsideration. The FAA allows for interlocutory appeals from an order denying a motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1)(B); TEX. CIV. PRAC. & REM. CODE ANN. § 51.016; *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 713 (Tex. App.—Houston [1st Dist.] 2020, no pet.). However, there is no statutory authority for an interlocutory appeal from an order denying a motion to reconsider the denial of a motion to compel arbitration. *SK Plymouth*, 605 S.W.3d at 713; *Hydro Mgmt. Sys., LLC v. Jalin, Ltd.*, No. 04-09-00813-CV, 2010 WL 1817813, at *2 (Tex. App.—San Antonio May 5, 2010, no pet.). Likewise, under the TAA, the denial of a motion to compel arbitration is immediately appealable, but the denial of a motion to reconsider the denial of a motion to compel arbitration is not. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1); *Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 201 (Tex. App.—Fort Worth 2015, no pet.). TFR does not contend that its motion for reconsideration is a new motion to compel arbitration. *Cf. Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 11–12 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (concluding court had jurisdiction over interlocutory appeal from denial of third motion to compel arbitration, which was distinct from second motion). Therefore, we dismiss the portion of TFR's appeal challenging the denial of the motion for reconsideration because no statute authorizes our jurisdiction. *See SK Plymouth*, 605 S.W.3d at 714; *Hydro Mgmt. Sys.*, 2010 WL 1817813, at *2.

We, however, have jurisdiction over TFR's interlocutory appeal from the denial of its motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1)(B); TEX. CIV. PRAC. & REM. CODE ANN. § 51.016; TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1). TFR timely filed a notice of appeal

within twenty days after the trial court signed its order denying TFR's motion to compel. *See* TEX. R. APP. P. 26.1(b); *Brand FX*, 458 S.W.3d at 201.

## II. Existence of a Valid, Enforceable Arbitration Agreement

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A party seeking to compel arbitration must establish: (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020). In this appeal, the parties' dispute whether TFR has established a valid, enforceable arbitration agreement through the exhibits attached to its motion to compel arbitration. Murway also contends that he is not a party to any arbitration agreement, even if Montage is.

The existence of a valid arbitration agreement is a legal question. *In re D. Wilson Constr.*, 196 S.W.3d at 781. In interpreting an agreement to arbitrate, we apply ordinary contract principles. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Valerus Compr'n Servs.*, 417 S.W.3d 202, 208 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "[W]hen we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of sufficient showing that the parties entered into a valid and binding arbitration agreement." *Wright v. Hernandez,* 469 S.W.3d 744, 751 (Tex. App.—El Paso 2015, no pet.). The initial evidentiary burden for proving the existence of an arbitration agreement is held by the movant. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding); *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App.—El Paso 2016, pet. denied). "This evidentiary burden encompasses threshold evidentiary issues such as authenticity

and evidence of mutual assent." *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 122 (Tex. App.—El Paso 2018, no pet.).

The evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment. *In Estate of Guerrero*, 465 S.W.3d 693, 703 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). A trial court "may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992). "However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts." *Id.*

TFR contends that the arbitration provision on page two of some of the Rental Out forms — the Additional Terms and Conditions page — was incorporated into the Application for Credit on the date that the Application was signed in 2019. TFR also contends that it established that the arbitration provision was applicable to each of the parties' transactions through Woods's affidavit and Exhibits A-1 to A-5. Montage and Murway contend there is no evidence of a contract containing an arbitration clause. In their brief, they review each of the five Rental Agreements and assert the forms do not include an Additional Terms and Conditions page, or, if the page is included, the forms do not comprise contracts because they suffer defects, such as lack of signatures or printing after contract formation.

We hold TFR has not carried its evidentiary burden to establish that the Application for Credit incorporated an arbitration agreement by reference. We also hold, after reviewing all five rental contracts individually, that TFR has established a binding arbitration agreement in only one of the rental contracts — contract number 1164071, reflected in Exhibit A-4 — and only as to Montage.

A. Incorporation by Reference

Initially, we reject TFR's contention that it has established the incorporation by reference of an arbitration provision into the Application for Credit on the date the Application was signed in 2019. TFR argues the Additional Terms and Conditions page, which is included on some of the forms in Exhibits A-1 to A-5, was incorporated by reference into the Application for Credit when Montage signed the Application in 2019. This Additional Terms and Conditions page includes the arbitration provision TFR wishes to enforce. For its argument, TFR looks to the following language in the Application for Credit:

> [Montage] in consideration of [TFR] extending commercial credit based upon the information furnished herein, warrants and agrees that by executing this Agreement: . . . . (b) [Montage] has received, read, understands and accepts all of the terms and conditions of TFR's Rental Contract . . . .

We agree that this language could incorporate terms in TFR's Rental Contract on the date the Application was signed in 2019. *See, e.g.*, *LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 726–30 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding contract incorporated separate document with arbitration clause, even though separate document was not attached to contract, was unsigned, and party opposing arbitration averred it had not received a copy of, known about, or read separate document); *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) ("The language used to refer to the incorporated document is not important as long as the signed document 'plainly refers' to the incorporated document." (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968))). However, TFR did not provide the trial court with an authenticated copy of the Rental Contract to which the Application refers.[3]

---

[3] TFR cites numerous cases in support of its argument for incorporation by reference, but each case is distinguishable by the fundamental difference that the issue of authentication was not discussed. *See, e.g.*, *In re Raymond James & Assocs., Inc.*, 196 S.W.3d 311, 315–16 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *LDF Constr., Inc.*, 459 S.W.3d

A party can satisfy its evidentiary burden to prove the existence of an arbitration agreement by submitting an authenticated copy of an agreement containing an arbitration clause. *DISH Network L.L.C. v. Alexander*, No. 13-20-00240-CV, 2021 WL 3085763, at *3 (Tex. App.—Corpus Christi–Edinburg July 22, 2021, pet. denied) (mem. op.); *ReadyOne Indus., Inc. v. Casillas*, 487 S.W.3d 254, 258 (Tex. App.—El Paso 2015, no pet.). A document is considered authentic if a witness vouches for its authenticity or if the document meets the requirement of self-authentication. TEX. R. EVID. 901(a), 902. Testimony of a witness with knowledge is one way to prove authenticity. *See id.* R. 901(b)(1). In a summary proceeding, "[a] properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as . . . evidence." *In Estate of Guerrero*, 465 S.W.3d at 704.

Here, TFR has not provided an affidavit from a person with knowledge that authenticates the Rental Contract referenced in the 2019 Application for Credit. Woods's affidavit provides as follows:

> 2. In April and May, 2021, TFR and Montage Development Company, LLC ("MONTAGE"), entered into numerous Rental Agreements (the "Agreements") whereby TFR agreed to rent equipment to MONTAGE. A true and correct copy of the Application for Credit is attached hereto as **Exhibit A-6.** A true and correct copy of the Rental Agreements are attached hereto as **Exhibits A-1-A-5.**
>
> 3. The Rental Agreements contain an arbitration provision, which provides, in part, that the parties shall submit to binding arbitration any "any [sic] dispute arising out of or relating to this transaction."

From these averments, TFR has not established that the authenticated Rental Agreements, which TFR and Montage purportedly entered into in 2021, and the Rental Contract, referenced in

---

at 729 (not discussing authentication and noting, "[T]he incorporated A201–1997 is a standard AIA form readily identifiable from the contract and available from the AIA."). Here, Montage and Murway contest whether any exhibit to TFR's motion to compel arbitration includes a binding arbitration clause, and they specifically contest whether the arbitration clause in the Additional Terms and Conditions page, found on some of the 2021 forms, modified earlier-formed contracts.

the 2019 Application, are the same.  Woods does not aver that the Rental Agreements are true and correct copies of the Rental Contract, or that the Additional Terms and Conditions page, found in some of the Rental Agreements, comprise the Rental Contract.  Additionally, Woods does not aver that the Additional Terms and Conditions remained the same between 2019 and 2021, such that an arbitration term reflected in the 2021 forms could accurately portray any such term purportedly incorporated into a document signed in 2019.  *Cf. In re Raymond James & Assocs., Inc.*, 196 S.W.3d 311, 315–16 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (noting incorporated "Client Agreement was revised and updated periodically, with the result that there were seven versions of the Client Agreement over the [relevant] period of time").  The Rental Agreements, moreover, do not facially show that they existed in 2019 and remained unchanged from 2019 to 2021.  *Cf. LDF Constr.*, 459 S.W.3d at 730–31 (looking to copyright date on incorporated form to establish existence at time of contract formation).  The most that can be said from the affidavit and exhibits is that TFR has established that an arbitration provision was among the Additional Terms and Conditions in the 2021 Rental Agreements, and that the provision remained unchanged across forms comprising the Rental Agreements whenever it was included.  In other words, TFR has not established that an arbitration provision was among the Additional Terms and Conditions in 2019, or that an arbitration provision was included within the Rental Contract, referenced by the Application for Credit.  Consequently, TFR has not satisfied its evidentiary burden to establish a valid arbitration provision through incorporation by reference.  *See In re Weekley Homes*, 180 S.W.3d at 130; *In Estate of Guerrero*, 465 S.W.3d at 705 ("Because Champion has not authenticated the Arbitration Agreement or any of the sales documents it attached to its motions to compel arbitration, there is no competent evidence of an agreement to arbitrate.").

B.  Individual Rental Agreements

The Application for Credit also stipulated:

Rentals by TFR to [Montage] made subsequent to the acceptance of this application by TFR shall be governed by the Rental Contract pertaining to such rental and by this Agreement.  In the event that any provisions of the Rental Contract shall conflict with any provision of this Agreement, the Rental Contract shall control.

Woods avers that Montage entered into the Rental Agreements in 2021.  The 2019 Application for Credit explicitly requires subsequent rentals to be governed by the "Rental Contract[s] pertaining to such rental[s]."  Therefore, we must look to whether these subsequent Rental Agreements contain valid arbitration provisions.

We determine the matter by again carefully reviewing the record.  Woods states that he has personal knowledge, and he avers that Exhibits A-1 to A-5, are "true and correct cop[ies] of the Rental Agreements."  *See Mackey v. Great Lakes Invs., Inc.*, 255 S.W.3d 243, 252 (Tex. App.—San Antonio 2008, pet. denied) ("A properly sworn affidavit . . . stating the attached documents are true and correct copies of the originals authenticates the copies so that they may be considered as summary judgment evidence.").  Woods does not indicate that any pages are missing from the Rental Agreements, and Montage has not provided any controverting affidavit.  Therefore, we review each Rental Agreement as the "true and correct copy" of the agreement that Woods asserts it to be.  *See* TEX. R. EVID. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

Exhibit A-1 consists of Rental Outs, Rental Invoices, and 4 Week Bills relating to Contract 1161827, all of which are unsigned by Montage.  As TFR's counsel asserted, "The [R]ental [O]ut documents . . . are the contracts."  One of the Rental Out forms in Exhibit A-1 is only a single page without an arbitration term.  The other Rental Out form is two pages and contains an arbitration

provision on the reverse side. However, the two-page Rental Out form is unsigned and indicates that it was printed after the date the rental equipment was released to Montage. In his affidavit, Woods avers that TFR and Montage "entered into" the Rental Agreements, but this statement is conclusory as to the Exhibit A-1. "A conclusory statement is one that does not provide the underlying facts to support the conclusion[.]" *Cnty. of El Paso v. Aguilar*, 600 S.W.3d 62, 77 (Tex. App.—El Paso 2020, no pet.) (citation omitted). Woods has not provided a factual basis to support his conclusion that Montage entered into this unsigned contract that was printed after the date stated for equipment delivery. Additionally, Woods asserts: "The Rental Agreements contain an arbitration provision, which provides, in part, that the parties shall submit to binding arbitration any 'any [sic] dispute arising out of or relating to this transaction.'" Woods does not provide a basis for this statement, other than the forms attached as Exhibits A-1 to A-5. His statement is conclusory to the extent it attempts to modify or add to the terms reflected on Exhibits A-1 to A-5. Accordingly, TFR has not provided probative evidence to establish a valid, binding arbitration provision as to Exhibit A-1 and Contract 1161827. *See Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.) ("Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case.") (citation omitted).[4]

As to Exhibit A-2, the Rental Agreement does not include a Rental Out form; it includes only a Rental Invoice and a Pickup Ticket, both of which are unsigned by Montage. We conclude that TFR has not provided probative evidence to establish a valid, binding arbitration provision as to Exhibit A-2 and Contract 1161701.

---

[4] TFR, moreover, does not provide a legal argument for contract formation based on the unsigned documents which state printing dates after delivery. In its brief, it asserts: "[W]hether anyone signed the separate rental agreements — and whether they were printed out or delivered to Montage after it received the equipment — are issues of distraction."

Exhibit A-3 includes a Rental Invoice, a 4 Week Bill, and a Pickup Ticket, all of which are unsigned by Montage. The exhibit also includes two Rental Out forms. One of these Rental Out forms is signed by a Montage representative and was printed on the date reflected as the equipment delivery date; however, this Rental Out form does not include an Additional Terms and Conditions page or otherwise include an arbitration provision. The other Rental Out form is unsigned and printed after the date reflected as the delivery date. We conclude TFR has not provided probative evidence to establish a valid, binding arbitration provision as to Exhibit A-3 and Contract 1162465.

In contrast, TFR has provided probative evidence of the existence of a valid arbitration provision as to the Rental Agreement reflected in Exhibit A-4 for Contract 1164071. This exhibit includes a Rental Out form, printed on the date stated as the equipment delivery date and which is signed by a Montage representative. The Rental Out form includes an Additional Terms and Conditions page, which includes the arbitration provision that TFR seeks to enforce. In their brief, Montage and Murway speculate that the second page could have been included in error; however, Woods averred, based on personal knowledge, that the document was "true and correct." Montage and Murway also assert that the signature concerns a "Loss Damage Waiver;" however, the Rental Out form reflects both a signature at the bottom of the first page and initials in a Loss Damage Waiver section. Last, Montage and Murway argue there is no indication that the person who signed the form was authorized to enter into contracts on Montage's behalf; however, Montage and Murway did not file a controverting affidavit to support their contention. *See* TEX. R. CIV. P. 93(7) (party challenging execution of written instrument as made without authority must file verified pleading); *Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 494 (Tex. App.—Tyler 2016, no pet.) ("Absent a verified denial [filed pursuant to Rule 93(7)], the document is received into evidence as fully proved."). Consequently, we conclude that TFR has established the existence of a valid, binding arbitration provision as to Montage with respect to the Rental Agreement reflected in

Exhibit A-4 — contract number 1164071. Montage and Murway do not contest that the scope of the arbitration provision covers TFR's claims.

The final Rental Agreement reflected in Exhibit A-5 does not include a Rental Out form; it includes only a Rental Invoice and a Pickup Ticket, both of which are unsigned by Montage. We conclude that TFR has not provided probative evidence to establish a valid, binding arbitration provision as to Exhibit A-5 and Contract 1170368.

### III. Murway Is Not Bound by the Arbitration Agreement

Having determined that Exhibit A-4 reflects a Rental Agreement with a binding arbitration provision as to Montage, we must now consider whether Murway, a nonsignatory, can be compelled to arbitrate. TFR argues that Murway can be compelled based on the equitable theory of agency and the intertwined-claims theory. We conclude TFR has not established that either theory applies.

Whether a nonsignatory can be compelled to arbitrate is a question of law. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). "Nonparties may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally." *Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 532 (Tex. 2023) (citation and brackets omitted). Courts have articulated six scenarios in which arbitration with nonsignatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018).

TFR asserts: "Murway is an agent of Montage; and TFR's claims relate to his status as an agent." Assuming that to be true, TFR has not provided us with legal authority pursuant to which a signatory could compel a nonsignatory agent to arbitrate. The authority TFR cites in its favor is inapposite because it concerns the reverse situation to here — i.e, a nonsignatory agent compelling

a signatory to arbitrate. *See, e.g.*, *McMillan v. Comput. Transl'n Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex. App.—Dallas 2001, no pet.). In this reverse situation, a nonsignatory agent looks to equity to compel arbitration, and arbitration is equitable because it prevents a signatory from avoiding arbitration with another signatory by suing only a nonsignatory agent. *See In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (orig. proceeding); *see also Roe v. Ladymon*, 318 S.W.3d 502, 520–21 (Tex. App.—Dallas 2010, no pet.).

The instant case, instead, is similar to *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 314 (5th Cir. 2011), in which a signatory sought to compel nonsignatories to arbitrate. In *DK*, the plaintiffs alleged that two nonsignatory corporate officers and fifteen "corporations controlled by them" had committed fraud, breach of contract, breaches of fiduciary duty, and other wrongs. *Id.* at 313. The court held: "Under general principles of contract and agency law, the fact that the defendant corporations entered into the Subscription Agreements[, which included arbitration provisions,] did not cause their agents, . . . who acted only as officers on behalf of the corporations, to be personally bound by those agreements." *Id.* at 314. The court concluded: "[B]oth the Texas and federal courts have recognized that 'it matters whether the party resisting arbitration is a signatory or not.'" *Id.* at 317 (citing *Merrill Lynch Inv. Mgrs v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003)).[5]

TFR also argues the intertwined-claims theory allows it to compel Murway to arbitrate. The intertwined-claims theory, also known as the alternative-estoppel theory, would allow a nonsignatory to compel arbitration when (1) it has a "close relationship" with a signatory to a contract with an arbitration agreement and (2) the claims are "intimately founded in and

---

[5] TFR tries to distinguish *DK* on the basis that the corporate officers in *DK* "merely signed the agreement on behalf of a disclosed principal," but the allegations in *DK* do not support this reading. *See DK*, 649 F.3d at 313 (allegations corporate officers controlled companies and committed fraud, breach of contract, breaches of fiduciary duty, and other wrongs).

intertwined with the underlying contract obligations." *Jody James Farms*, 547 S.W.3d at 639 (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). The Texas Supreme Court has considered but never accepted the theory as valid. *See id.*

Even if valid, TFR has not established that the theory applies here. To begin, it is not apparent that the theory could apply to a nonsignatory, such as Murway. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003) ("The Second Circuit has expressly stated that the [alternative-estoppel theory] applies only to prevent 'a *signatory* from avoiding arbitration with a nonsignatory when the issues the *nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.*'") (quoting *Thomson-CSF*, 64 F.3d at 779 (emphasis added)); *see also Jody James Farms*, 547 S.W.3d at 629 (considering whether "a person who has agreed to arbitrate disputes with one party may be required to arbitrate related disputes with non-parties"). Assuming the theory could apply, "alternative estoppel requires not only a dispute intertwined with the contract but also a relationship between the parties that developed in a manner that makes it 'unfair' *not* to compel arbitration." *Jody James Farms*, 547 S.W.3d at 639 (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008)). Here, the arbitration provision is found in the Rental Agreement reflected in Exhibit A-4. Murway did not sign this agreement, and there is no indication that he was even aware of this agreement or the arbitration provision within it. Under these circumstances, we cannot say that it would be unfair not to compel Murway to arbitrate.

## CONCLUSION

We hold that the trial court abused its discretion by denying TFR's motion to compel arbitration as to its claims against Montage related to the Rental Agreement referenced in Exhibit A-4 of TFR's motion — contract number 1164071. Therefore, we reverse the trial court's order insofar as it denied TFR's motion to compel arbitration and stay proceedings as to these claims.

We otherwise affirm the trial court's "Order Denying Plaintiff's Motion for Referral to Private Arbitration and Motion to Stay Proceedings," signed on June 29, 2022. We remand the case with instructions that trial court proceedings as to TFR's claims against Montage related to contract number 1164071 be stayed and that TFR and Montage be compelled to arbitrate these claims.[6]

Rebeca C. Martinez, Chief Justice

---

[6] TFR asks for rendition but has not provided any authority under which we may partially render judgment in its favor. When reversing the denial of a motion to compel arbitration, our practice — and that of the Texas Supreme Court — has been to remand. *See, e.g.*, *Taylor Morrison of Tex., Inc.*, 660 S.W.3d at 535; *St. Mary's Hall, Inc. v. Garcia*, No. 04-21-00073-CV, 2022 WL 789498, at *4 (Tex. App.—San Antonio Mar. 16, 2022, no pet.) (mem. op.).